### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21-cv-20037-JLK/Becerra

DANIEL TORRES,

      Plaintiff,

v.

KILOLO KIJAKAZI,[1] Commissioner of
Social Security Administration,

      Defendant.

_____/

### REPORT AND RECOMMENDATION
### ON CROSS MOTIONS FOR SUMMARY JUDGMENT[2]

    **THIS CAUSE** came before the Court on the Parties' Cross Motions for Summary Judgment.  ECF Nos. [21], [22].  Plaintiff Daniel Torres ("Plaintiff" or "Torres") filed his Motion for Summary Judgment and Memorandum in Support Thereof on August 4, 2021 ("Plaintiff's Motion").  ECF No. [21].  Defendant, the Commissioner of Social Security ("Defendant" or "Commissioner"), filed a Response in Opposition to Plaintiff's Motion for Summary Judgment and Cross Motion for Summary Judgment on September 3, 2021 ("Defendant's Motion").  ECF No. [22].  Plaintiff filed a Reply to Defendant's Motion ("Plaintiff's Reply") on September 20, 2021.  ECF Nos. [23], [24].[3]  The Court must now determine whether the decision reached by the

---

[1] Although the case style originally listed Andrew Saul as Defendant, Kilolo Kijakazi is now the Commissioner of Social Security and is automatically substituted as Defendant pursuant to Federal Rule of Civil Procedure 25(d).

[2] This case was referred to the undersigned for all pre-trial, non-dispositive matters, and for a Report and Recommendation on any dispositive matters by the Honorable James Lawrence King, United States District Judge.  ECF No. [2].

[3] Plaintiff's Reply, ECF No. [24], incorporates the arguments in his Response to Defendant's Motion, ECF No. [23].

Administrative Law Judge (the "ALJ") is supported by substantial evidence and whether the correct legal standards were applied.  After a review of the Motions, the record, and all relevant authorities, the undersigned hereby **RECOMMENDS** that Plaintiff's Motion be **GRANTED,** and Defendant's Motion be **DENIED**.

### I.       BACKGROUND

On November 18, 2015, Plaintiff filed an application for supplemental security income benefits.  R. at 298–306. [4]  Plaintiff alleged a disability onset date of March 30, 2007.  *Id.* at 298. Plaintiff was born on December 7, 1972 and was 42 years old at the time his application was filed. *Id.* at 38, 64, 298.  The Social Security Administration ("SSA") initially denied Plaintiff's claims on May 14, 2018, which the Appeals Council vacated and remanded on October 4, 2019.  *Id*. at 158, 179.  Thereafter, Plaintiff appeared for a hearing which was held on March 13, 2020, in Miami, Florida.  *Id*. at 50.  A vocational expert, Ms. Jennifer Guediri (the "VE"), testified at the hearing.  *Id.* at 82.  On March 24, 2020, the ALJ denied Plaintiff's application.  *Id*. at 22. Thereafter, Plaintiff requested a review of the ALJ's decision.  *See id.* at 7.  On November 2, 2020, Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council.  *Id.* at 7–9.  Having exhausted all available administrative remedies, and pursuant to 42 U.S.C. § 405(g), Plaintiff filed the instant action.  ECF No. [1].

### A.  The SSA Hearing

At the hearing, Plaintiff testified that he is unable to work due to his "mental problem[s]," including being "nervous" and experiencing panic attacks.  R. at 66–67.  Specifically, Plaintiff testified that his panic attacks include "shakes," heart palpitations, and tachycardia as often as two

---

[4] References herein to "R. at __" are to the Social Security transcript, which can be found at ECF No. [18].  The page numbers to the transcript referenced herein refer to those assigned by the Court's electronic docketing system as found on the top right corner of the page.

to three times a week. *Id.* at 67. According to Plaintiff, he has to lay down during these episodes and has sometimes fainted and experienced pain in his arm. *Id.* Plaintiff testified that he regularly takes medication, including Clonazepam, Seroquel, Xanax, and Duexis. *Id.* at 67–68. Plaintiff testified that he does not see any doctors on a regular basis. *Id.* at 68–69.

As to Plaintiff's daily routine, Plaintiff testified that he typically wakes up between 10:30 a.m. and 11:00 a.m. because the medications make it difficult for him to get up earlier. *Id.* at 71. Plaintiff lives with a friend who owns the house. *See id.* Plaintiff states that he sometimes walks the friend's dogs if he does not feel too weak. *Id.* He testified that he then eats but that his friend cooks for him. *Id.* Plaintiff described his day as consisting of watching television, sleeping, and eating. *Id.* He stated that he sleeps three to four hours during the day as a result of his medications, takes his medication again at 6:30 p.m., and usually falls asleep about two hours later. *Id.* at 71–72. He testified that he does not go out. *Id.* at 72. Plaintiff also testified that although he regularly goes days without bathing because he does not have "the desire to get up from the bed," he will bathe frequently when he has an anxiety attack. *Id.* at 79–80. Plaintiff also testified that he was previously arrested on two occasions. *Id.* at 72–73. First, he was arrested for domestic violence in 2008, was jailed for 28 days, and the charge was later "t[aken] away." *Id.* at 73. Then, he was arrested in 2018 after getting into a fistfight with friends, was released from jail the same day, and the charges were thrown out. *Id.* at 73–74.

As to past work, Plaintiff testified that, although he had some income in 2003, 2006, and 2007, he has been unable to work due to his "mental problems." *Id.* at 66–67. Accordingly, the ALJ and VE understood that Plaintiff had "no past relevant work." *Id.* at 83.

Based on Plaintiff's testimony and the evidence, the ALJ asked the VE to consider a hypothetical individual with Plaintiff's medical, educational, and vocational profile, who can

perform the full range of work at all exertion levels but has certain limitations. *Id.* at 87–88. This hypothetical individual could "never climb ladders, ropes, or scaffolds;" could "never work at unprotected heights or with dangerous machinery;" could "follow detailed but uninvolved instructions;" and could "occasionally interact with coworkers and supervisors, but never with the public." *Id.* at 88. The ALJ asked the VE whether such a hypothetical individual would be able to perform any work in the national economy. *Id.* In answering, the VE categorized work using the Dictionary of Occupational Titles ("DOT") and referred to the Specific Vocational Preparation ("SVP") rating. The VE testified that Plaintiff would be able to perform jobs, such as: (1) dining room attendant, as described in DOT 311.677-018, performed at a "medium" exertion level, with a SVP rating of two, and with 237,000 available positions; (2) laundry laborer, as described in DOT 361.687-018, performed at a "medium" exertion level, with a SVP rating of two, and with 235,000 available positions; and (3) stock selector (*i.e.*, somebody putting items away in a small grocery environment), as described in DOT 922.687-058, with a "medium" exertion level, with a SVP rating of two, and with 275,000 available positions. *Id.*

Next, the ALJ asked the VE to consider a second hypothetical individual with Plaintiff's medical, educational, and vocational profile. *Id.* However, in addition to the same limitations as in the first hypothetical, this individual also "will miss two or more days of work a month, due to psychologically based symptoms." *Id.* The ALJ asked the VE whether this second hypothetical individual would be able to perform any work in the national economy. *Id.* The VE answered that such an individual would be precluded from all work. *Id.* at 88–89.

Thereafter, Plaintiff's attorney asked the VE whether a "marked limitation in the ability to respond appropriately to work pressures in a usual work setting" would "eliminate all the jobs" that the VE testified Plaintiff could perform. *Id.* at 89. The VE answered that she would guess

that an individual could not sustain employment with marked limitations. *Id.* at 89–90. Plaintiff's attorney then asked the VE whether such an individual would be able to sustain any job "if the person basically had marked restriction in the ability to understand and remember detailed instructions" and "moderate restriction in the ability to understand and remember short, simple instructions and carry out short, simple instructions, and moderate ability to make judgments on simple, work-related decisions . . . but the individual is still able to function satisfactorily." *Id.* at 90. The VE answered that, in her opinion, such an individual may get the job but could not sustain any job. *Id.*

### B. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3). Plaintiff "bears the burden of proving that he is disabled," and "he is responsible for producing evidence in support of his claim." *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

The ALJ is required to follow a five-step sequential evaluation process to determine whether a claimant is disabled. *See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). At step one, the ALJ must determine whether the claimant is "currently engaged in substantial gainful activity"; at step two, the ALJ must determine whether the claimant suffers

from "severe"[5] impairment(s); at step three, the ALJ must determine whether the claimant suffers from an impairment that meets, or medically equals, a listed impairment found under 20 C.F.R. pt. 404, subpt. P, app. 1; at step four, the ALJ must determine whether the claimant is able to return to his past relevant work given his Residual Functional Capacity ("RFC");[6] and if not, at step five, the ALJ must determine whether the claimant is able to perform other work as it exists in the national economy, given his age, education, RFC, and work experience. *Id.* While "[a]n affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability[,]" "[a] negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (citing 20 C.F.R. § 416.920(a)–(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985)).

### C.  The ALJ's Decision

On March 24, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from November 18, 2015, the date Plaintiff filed his application.[7]  R. at 28–29.  In reaching his decision, the ALJ applied the five-step sequential evaluation process that must be used when considering these types of claims.  *Id.* at 29–39; *see* 20 C.F.R. § 416.920(a);

---

[5] An impairment is considered "severe" if it significantly limits a person's physical or mental ability to perform basic work activities "for a continuous period of at least twelve months," or is "expected to result in death."  20 C.F.R. §§ 404.1509, 404.1522.

[6] RFC is defined as "the most [a claimant] can still do despite [a claimant's physical and mental] limitations."  20 C.F.R § 404.1545(a).

[7] The ALJ noted in his decision that "[a]lthough supplemental security income is not payable prior to the month following the month in which the application was filed (20 CFR 416.335), [he] considered the complete medical history consistent with 20 CFR 416.912."  R. at 29.

*see also Frame*, 596 F. App'x at 910.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 18, 2015, the application date.  R. at 30.

At step two, the ALJ determined that Plaintiff suffers from four "severe" impairments: (1) personality disorder; (2) bipolar and depressive disorders; (3) anxiety disorder; and (4) substance abuse disorders.  *Id.* at 30–31.  The ALJ found that these medically determinable impairments "result in more than minimal limitations in [Plaintiff's] ability to perform basic work activities." *Id.* at 31.

At step three, the ALJ considered the listing requirements and determined that Plaintiff's impairments did not meet or medically equal the severity of any of the relevant listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1.[8]  *Id.*  Next, the ALJ determined that Plaintiff had the RFC "to perform a full range of work at all exertional levels but with [the following] nonexertional limitations;" could "never climb ladders, ropes, or scaffolds" or "work at unprotected heights or with dangerous machinery;" could "follow detailed but involved instructions;" and could "occasionally interact with coworkers and the public but never with the public."  *Id.* at 33.  As further discussed herein, Defendant contends that this finding contains two typographical errors, evidenced by the ALJ's hypothetical questions to the VE, and that the ALJ actually found that Plaintiff could "follow detailed but *uninvolved* instructions" and could "occasionally interact with coworkers and *supervisors*, but never with the public."  ECF No. [22] at 3 n.3.  At step four, the ALJ noted that Plaintiff has no past relevant work.  R. at 38.

---

[8] The Listing of Impairments is a predetermined set of "major body systems impairments that [are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience" that would render an individual disabled.  20 C.F.R. § 416.925(a).  An individual's impairment is "medically equivalent to a listed impairment . . . if it is at least equal in severity and duration to the criteria of any listed impairment."  *Id.* § 416.926(a); *see also id.* § 416.920(d).

At step five, the ALJ determined that Plaintiff could perform other jobs in the national economy, including: (1) a dining room attendant, DOT 311.677-018, at a medium exertion level, and (2) a laundry laborer, DOT 361.687-018, also at the medium exertion level. *Id*. at 39. Finding that Plaintiff could perform other jobs in the national economy, the ALJ concluded that Plaintiff has not been disabled from November 18, 2015 through the date of the ALJ's decision. *Id.* at 40.

### D.  The Instant Motions

Plaintiff sets forth six arguments in his Motion. ECF No. [21]. First, Plaintiff argues that the ALJ's Step 3 finding that Plaintiff's mental impairments did not meet or medically equal a listed impairment requires remand because the ALJ neglected to analyze whether one of his impairments meets the requirements of Listing 12.02, and failed to consider whether Plaintiff meets the Paragraph A criteria for any of his impairments ("Argument 1"). *Id.* at 5–9. In support of that argument, Plaintiff contends that the ALJ contradicted himself by citing as support that Plaintiff did not meet the Paragraph C criteria given his prior work, even though the ALJ also found that Plaintiff did not have any past relevant work. *Id.* at 7. Second, Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence and the ALJ failed to comply with the requirements of SSR 96-8p ("Argument 2"). *Id.* at 9–12. Third, Plaintiff contends that the ALJ did not meet his burden in finding that a significant number of jobs existed in the national economy that Plaintiff could perform based on Plaintiff's RFC ("Argument 3"). *Id.* at 13. Fourth, Plaintiff argues that the ALJ failed to give controlling weight to the opinion of Dr. Mowerman, Plaintiff's treating psychiatrist, and improperly relied on other opinion evidence ("Argument 4"). *Id.* at 13–25. Specifically, Plaintiff contends that the ALJ should not have given controlling weight to the State agency psychological consultants because the consultants included a reference to an incarceration history, but Plaintiff's evidentiary records provided to them lacked any evidence of

Plaintiff's incarceration history. *Id.* at 21. According to Plaintiff, this suggests that the consultants either did not properly review Plaintiff's file, or "they were thinking of somebody else when they issued their opinions." *Id.* at 21–22. Fifth, Plaintiff contends the ALJ also failed to state with particularity the weight given to Dr. Mowerman's opinion ("Argument 5"). *Id.* at 25. Sixth, Plaintiff contends that the ALJ erred by making no finding as to the number of days Plaintiff is typically likely to be absent from work, which was a necessary analysis given Plaintiff's mental impairments ("Argument 6"). *Id.* at 25–26.

In response, Defendant argues that the ALJ's decision was based on substantial evidence and should be affirmed. ECF No. [22] at 10–18. Defendant addresses Plaintiff's Arguments 1, 4, and 5 together arguing that substantial evidence supports the ALJ's Step 3 finding that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment. *Id.* at 9–15. Specifically, the Commissioner contends that the ALJ found that the record does not show deterioration in Plaintiff's functioning or that Plaintiff is unable to function outside of his home without psychosocial support, including consideration of Plaintiff's hospitalizations, and cites to normal mental status exam findings in support of his conclusion. *Id.* at 10–11. Defendant also argues that the ALJ need not recite all evidence in his decision. *Id.* at 12. According to Defendant, even if the ALJ erred in relying on the statement in the record that Plaintiff worked, such error was harmless. *Id.* Additionally, Defendant argues that substantial evidence supports the ALJ's finding that Plaintiff does not meet the criteria for Listing 12.02 because the ALJ properly discounted Dr. Mowerman's opinion as inconsistent with his own treatment notes and/or other record evidence. *Id.* at 12–15.

Second, Defendant addresses Plaintiff's Arguments 2, 3, 4, and 6 in one response arguing that substantial evidence supports the ALJ's RFC finding. *Id.* at 15–18. Specifically, Defendant

contends that the RFC determination contains typographical errors that form the basis for some of Plaintiff's challenges to the RFC determination. *Id.* at 3 n.3. According to Defendant, the ALJ's hypothetical questions to the VE clearly demonstrate that the RFC determination was that Plaintiff could "follow detailed but *uninvolved* instructions" and could "occasionally interact with coworkers and *supervisors*, but never with the public." *Id.* Defendant also argues that the ALJ complied with SSR 96-8p because the ALJ considered all of the evidence, and Plaintiff's arguments that the ALJ had to make specific findings regarding his ability to respond to work pressure and attendance are meritless. *Id.* at 16. Finally, Defendant contends that the ALJ properly relied on the state agency consultants' opinions and explained why he discounted Dr. Mowerman's opinion. *Id.* at 16–18.

In the Reply, Plaintiff re-asserts that the ALJ failed to properly consider Dr. Mowerman's testimony and that the Step 3 finding and RFC decision are not supported by substantial evidence. ECF No. [23] at 11–15. Plaintiff maintains that he meets the Paragraph A and Paragraph C requirements for each of the Listings, evidenced in part by his hospitalizations. *See id.* at 2–7. Plaintiff responds to Defendant's argument that the RFC determination contains harmless typographical errors by arguing that "one cannot be 100% certain" that the finding was in fact as Defendant argues, and remand is required due to "observed inconsistency" in the ALJ's decision. *Id.* at 8–9. Plaintiff maintains that Dr. Mowerman's opinion should have been given controlling weight and that the non-examining State agency consultants' opinions should have been given no weight, maintaining his argument that their opinion is not credible in light of the reference to Plaintiff's incarceration history. *Id.* at 11–15. Plaintiff re-asserts that the ALJ was required to make an explicit finding as to Plaintiff's need for absences. *Id.* at 16–17.

## II.   ANALYSIS

Judicial review of an ALJ's final decision is limited to whether there is substantial evidence in the record to support the ALJ's findings, and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).   "Substantial evidence is more than a scintilla, but less than a preponderance.   It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson*, 402 U.S. at 401); *see also Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

In reviewing the ALJ's decision, a court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment' for that of the Commissioner." *Matos v. Comm'r of Soc. Sec.*, No. 21-cv-11764, 2022 WL 97144, at *3 (11th Cir. Jan. 10, 2022) (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)).   Instead, so long as the ALJ's findings are supported by substantial evidence, they are conclusive, and the Court must defer to the ALJ's decision. *See Crawford v. Comm'r, Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004); *see also Hunter v. Comm'r, Soc. Sec. Admin.*, 808 F.3d 818, 822 (11th Cir. 2015).   Even if the Court finds that "the evidence preponderates against the Commissioner's findings," the Court must affirm the Commissioner's decision if the decision is supported by substantial evidence. *See* Crawford, 363 F.3d at 1158–59.   In this respect, "the ALJ has a basic obligation to develop a full and fair record[,]" given that a hearing before an ALJ is not an adversarial proceeding. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).   The Court also reviews the ALJ's decision "to determine whether the correct legal standards were applied." *Id.*   However, no "presumption of validity attaches to the [ALJ's] conclusions of law." *See Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

The ALJ must state with particularity the weight given to the medical opinions provided and the justification for the weight. *Martinez v. Acting Comm'r of Soc. Sec.*, 660 F. App'x 787, 793 (11th Cir. 2016) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). Absent "good cause," the ALJ must accord the medical opinions of treating physicians "substantial or considerable weight." *Winschel*, 631 F.3d at 1179.[9] Good cause exists where: "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). Where good cause exists, the ALJ must clearly articulate the reasons for giving less than substantial or considerable weight to the medical opinion of a treating physician. *Winschel*, 631 F.3d at 1179.

As to the Step Three analysis, a claimant bears the burden of proving that he meets a listing. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991). "To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Wilson,* 284 F.3d at 1224 (citing 20 C.F.R. § 404.1525(a)–(d)). Moreover, a claimant must meet all the specified medical criteria; if a claimant has an impairment that meets only some of the criteria for a listing, then the claimant will not qualify for such listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Under the Code of Federal Regulations, each listing has certain criteria that must be

---

[9] As of March 27, 2017, an ALJ is no longer required to give a treating physician's medical opinions controlling weight, rather the ALJ is to apply the same factors in considering all medical opinions. *See* 20 C.F.R. §§ 404.1520c(a), 404.1527(c), 416.920c(a), 416.927(c). However, because Plaintiff filed his claim in 2015, well before the new SSA regulations went into effect, the new regulations do not apply. *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 (11th Cir. 2021) (noting that the new framework applies to disability claims filed after March 27, 2017).

satisfied.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1.  Those criteria are occasionally divided into multiple categories called "paragraphs."  *Id.*  These paragraphs are referred to as Paragraphs A, B, C, and so forth.  *Id.*  For instance, the listings for "depressive, bipolar and related disorders," (listing 12.04), and "anxiety and obsessive-compulsive disorders," (listing 12.06) have three Paragraphs, A, B, and C.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, 12.04, 12.06.  To meet these listings, a claimant must satisfy the requirements of either A and B, or A and C.  *Id*.

As to the RFC, the ALJ's assessment must be "based on all relevant medical and other evidence, of a claimant's remaining ability to work despite [a claimant's] impairment."  *Castle v. Colvin*, 557 F. App'x 849, 852 (11th Cir. 2014).  In determining a claimant's RFC, "the ALJ must consider all medical opinions in the claimant's case record together with other pertinent evidence."  *Duffy v. Comm'r of Soc. Sec.*, 736 F. App'x 834, 836 (11th Cir. 2018) (citing 20 C.F.R. §§ 404.1520(e), 416.920(e)).  "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in [the ALJ's] decision," however, the ALJ's decision must contain sufficient detail so that the court can determine that the ALJ considered the claimant's medical condition as a whole.  *Lewen v. Comm'r of Soc. Sec.*, 605 F. App'x 967, 968 (11th Cir. 2015); *see Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 601–02 (11th Cir. 2017) (noting that although the opinion "need not specifically refer to every piece of evidence, [it] must contain sufficient detail so that [the court] can conclude that the ALJ considered the claimant's medical condition as a whole in assessing her residual functional capacity").

In making an RFC determination, the ALJ is required to evaluate every medical opinion provided and determine what weight to give the opinion.  20 C.F.R. § 404.1527.  "Medical opinions are statements from physicians . . . that reflect judgments about the nature and severity of the claimant's impairment(s), including the claimant's symptoms, diagnosis and prognosis, what the

claimant can still do despite impairment(s), and the claimant's physical or mental restrictions." *Winschel*, 631 F.3d at 1178–79 (quotation marks and alterations omitted) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).

**A. The ALJ's Step Three Finding that Plaintiff Does Not Meet a Listing is Not Supported by Substantial Evidence.**

Plaintiff contends that the ALJ's Step Three finding is not supported by substantial evidence for three reasons. First, Plaintiff argues that the ALJ never discussed whether Plaintiff met or equaled Paragraph A for any of the listings. ECF No. [21] at 6. Second, Plaintiff argues that the ALJ erred by failing to at all consider whether Plaintiff met or equaled the criteria for Listing 12.02, neurocognitive disorders, despite his treating physician's finding that he met those criteria. *Id.* Finally, Plaintiff argues that the ALJ erred in finding that Plaintiff did not meet Paragraph C of the mental listings, specifically, that Plaintiff could not establish that the he has only marginal adjustment, by incorrectly: (1) finding that there is no evidence of "changes or increased demands [that] have led to exacerbation" given that the record includes instances of hospitalization and "continuous medication changes;" (2) noting that Plaintiff worked after his alleged onset of disability, which is inconsistent with the ALJ's other findings; (3) relying on the fact that Plaintiff helped a friend with whom he lived; and (4) finding that Plaintiff's planning skills were unimpaired. *Id.* at 5–9.

In the Response, the Commissioner argues that the Paragraph C criteria are identical for all of the relevant Listings, and that the ALJ's finding that Plaintiff does not meet the requirements for Paragraph C is supported by substantial evidence. *See* ECF No. [22] at 10–12. As such, Defendant argues there was no error in failing to explicitly address Paragraph A for any of the Listings. *Id.* Further, Defendant contends that the ALJ cites to evidence to provide good reasons for discounting Dr. Mowerman's opinion that Plaintiff met the requirements of Listing 12.02, as

Dr. Mowerman's opinion was inconsistent with his own treatment records.  *Id.* at 10–15.  The Commissioner also responds that Plaintiff's argument concerning Listing 12.02 is meritless because the ALJ need not explicitly reference each Listing that was considered, provided that the Listing was indeed considered.  *Id.* at 12.  In his Reply, Plaintiff maintains that he meets the Paragraph A and Paragraph C requirements for each of the Listings.  *See* ECF No. [23] at 2–7.

As a preliminary matter, there is no dispute that a plaintiff can meet the mental health Listings at issue here by satisfying the criteria in both Paragraphs A *and* B, or by satisfying the criteria of Paragraphs A *and* C.[10]  Here, the ALJ did not review Paragraph A, but did review Paragraphs B and C.  Plaintiff does not allege any error with regard to the ALJ's analysis of Paragraph B.  Instead, as noted above, the issue at hand is whether: (1) the failure to consider Paragraph A was error; (2) the failure to consider Listing 12.02 was error; or (3) the findings as to Paragraph C were supported by substantial evidence.

First, the failure to consider Paragraph A, on its own, is not error given that the ALJ considered Paragraphs B and C.  Indeed, even if the ALJ had considered and found that Plaintiff met Paragraph A, the ALJ found that Plaintiff did not meet Paragraph B or C, and as such, the conclusion would have been the same.  *Himes v. Comm'r of Soc. Sec.*, 585 Fed. App'x 758, 763 (11th Cir. 2014) (where "the ALJ determined that [claimant] did not meet or medically equal a Listing" and "the ALJ did not consider the Paragraph A criteria for Listing 12.04, the error, if any, was harmless because [claimant] had to show he met the criteria in both Paragraphs A and B, and

---

[10]  The Listings at issue are 12.02, 12.04, and 12.06, as Plaintiff argues that he meets the requirements for these Listings.  *See* ECF No. [21] at 5–6.  Although the ALJ considered Listing 12.08, Plaintiff does not argue that the ALJ improperly found that Plaintiff does not meet Listing 12.08.

substantial evidence supports the ALJ's decision that [claimant] did not satisfy Paragraph B"); 20 C.F.R. pt. 404, subpt. P, app. 1, 12.02, 12.04, 12.06.

Likewise, the failure to consider Listing 12.02 is not error because the ALJ considered Paragraphs B and C.  Given that Listing 12.02 contains the same Paragraphs as those considered, the ALJ did not commit error simply by failing to identify the listing by name.  Indeed, "an ALJ's failure to discuss specific listings 'does not necessarily show that the ALJ did not consider those listings.'"  *Toro v. Saul*, No. 18-cv-25431, 2021 WL 4482734, at *5 (S.D. Fla. May 4, 2021) (quoting *Flemming v. Comm'r of the Soc. Sec. Admin.*, 635 F. App'x 673, 676 (11th Cir. 2015), *report and recommendation adopted sub nom. Del Toro v. Comm'r of Soc. Sec. Admin.*, No. 18-cv-25431, 2021 WL 4479082 (S.D. Fla. Sept. 30, 2021); *see also Bellew*, 605 F. App'x at 920 ("The ALJ's finding as to whether a claimant does or does not meet a listed impairment need not be explicit and may be implied from the record.") (citing *Hutchison v. Bowen,* 787 F.2d 1461, 1463 (11th Cir. 1986)).  An ALJ need not "'mechanically recite' the evidence or listings she has considered" because "a finding may be implied where an ALJ has considered all of the evidence and states that the listings are otherwise inapplicable."  *Toro*, 2021 WL 4482734, at *5 (quoting *Flemming*, 635 F. App'x at 676).  Because the ALJ's decision states that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part [404], Subpart P, Appendix 1," the ALJ's finding, "by implication, includes listing 12.0[2]."  *See id.* at *6.  Here, as Plaintiff concedes, the Listing requirements for Paragraph C of 12.02 contain the exact same language as that of 12.04.  ECF No. [21] at 6 n.4; *see also Wheatley v. Colvin*, No. 16-cv-81205, 2017 WL 2313880, at *19 (S.D. Fla. May 26, 2017) ("The 'Paragraph C' criteria for Listing 12.04 is also the same as that for Listing 12.02.").  Because the ALJ explicitly stated that Plaintiff's impairments do not meet or medically

equal the requirements of Listing 12.04, Plaintiff could not meet the requirements of Listing 12.02, at least as considered by the ALJ.  *See Flemming*, 635 F. App'x at 677–78 (concluding that "substantial evidence supports the ALJ's implicit determination that Flemming did not meet or equal Listing 12.02 or Listing 12.03" considering that "[a]ll three listings—12.02, 12.03, and 12.08—require a claimant to satisfy the same paragraph B criteria, which concerns functional limitations caused by the mental impairment, despite requiring differing qualifying symptoms" and the ALJ's decision analyzed Paragraph B criteria for Listing 12.08); *Toro*, 2021 WL 4482734, at *6 ("Courts have found that, when an ALJ considers listing 12.04 (as the ALJ did here), the criteria are so similar that it encapsulates the same considerations found in section 12.03 . . . . So, given the ALJ's review of all the evidence in the record and the consideration of Plaintiff's mental impairments in listing 12.04, we cannot conclude that the decision lacks substantial evidence for the omission of 12.03.").

However, the ALJ's findings as to Paragraph C do constitute error as they are not supported by substantial evidence.  Paragraph C for Listings 12.02 and 12.04 states:

> Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>
> Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder; and
>
> Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.

*Kalina v. Saul*, No. 19-cv-81117, 2020 WL 13401904, at *10 (S.D. Fla. Nov. 2, 2020); *see also* 20 C.F.R. pt. 404, subpt. P, app. 1, 12.02, 12.04.  Here, in finding that Plaintiff did not satisfy the Paragraph C criteria, the ALJ noted that there is "no evidence" that Plaintiff had only marginal

adjustment, as "there is no evidence that shows that changes or increased demands have led to exacerbation in the claimant's symptoms and signs and to deterioration in his functioning." R. at 32. In support of that finding, the ALJ only cited to three things: (1) Plaintiff worked after the alleged onset date of disability; (2) Plaintiff cared for his friend; and (3) Plaintiff's planning skills were unimpaired. *Id.* (internal citations omitted). However, the record cited by the ALJ does not support the ALJ's findings.

First, as to the finding that Plaintiff worked after his alleged onset date of disability, the ALJ cites to a January 11, 2016 Psychiatric Progress Note of Dr. Olti, which under a "Summary of Assessment" states that Plaintiff is "now working." *Id.* at 473. However, that very same document also included a statement from Dr. Olti that Plaintiff reported he "[does not] feel well enough to work." *Id.* As such, the medical record cited for the proposition that there was "no evidence that shows that changes or increased demands have led to exacerbation in the claimant's symptoms and signs and to deterioration in his functioning" does not support the conclusion that Plaintiff was in fact working. At best, it shows that Plaintiff tried to resume work and could not. Moreover, the ALJ made a contrary finding earlier in the Opinion, noting that Plaintiff's unsuccessful work attempt subsequent to the alleged onset date of disability was "preceded by a significant break in [] work activity" and "the claimant worked less than 6 months, and as he testified, he stopped working because of his impairments." *Id.* at 30. Indeed, his lack of work history was also a factor in the ALJ's finding that there was no past relevant work. Although that standard may be different for the past relevant work finding, as the Commissioner argues, the fact still remains that the record is devoid of any support for the proposition that Plaintiff was able to work, which is the factual finding the ALJ makes in concluding that Plaintiff did not meet the criteria of Paragraph C. As such, the reliance on the fact that Plaintiff was working as support for

the ALJ's Paragraph C finding is not supported by the record, including the very record that was cited by the ALJ.

Second, the ALJ cites to Dr. Olti's Assessment notes dated June 24, 2015 as evidence that Plaintiff cared for a friend, and therefore, did not meet the Paragraph C criteria.  *Id.* at 32. However, Dr. Olti's Assessment notes merely state that Plaintiff "lives with a friend, [and] he *needs* to take care of the friend."  *Id.* at 449 (emphasis added).  In short, there is no evidence in the record that supports the finding that Plaintiff cared for his friend, nor does the ALJ explain or cite to any evidence that would explain what it is that Plaintiff does for the friend that would otherwise support the conclusion that "there is no evidence that shows that changes or increased demands have led to exacerbation in the claimant's symptoms and signs and to deterioration in his functioning."

Finally, the ALJ's conclusion that there is *no* evidence of the Paragraph C criteria is not supported by his citation to Plaintiff's unimpaired planning skills.  While there are indeed several instances where Dr. Mowerman noted that Plaintiff's planning skills were not impaired, *see id.* at 32, there is also one instance where Dr. Mowerman noted the opposite, that Plaintiff's "[p]lanning skills were impaired."  *Id.* at 548.  Moreover, without further explanation, it is unclear how the ALJ's citation to records finding that Plaintiff often did not have impaired planning skills supports his conclusion as to the Paragraph C requirements.[11]

---

[11]   Plaintiff also argues that the Paragraph C analysis is flawed because the ALJ did not account for his hospitalizations.  Although Plaintiff is correct that the ALJ does not account for the hospitalizations at Step Three, the ALJ noted that he had reviewed the evidence indicating that Plaintiff was hospitalized later in the opinion and found it to be unpersuasive and inconsistent with someone who was disabled.  *Id.* at 38.

Therefore, because the record evidence that the ALJ cites to in support of his findings that Plaintiff does not meet the Paragraph C criteria does not in fact support that conclusion, the ALJ's Step Three finding is not supported by substantial evidence.   Accordingly, the undersigned **RECOMMENDS** that the ALJ's decision be remanded.

### B. The ALJ's Consideration of Dr. Mowerman's Opinion Is Not Supported by Substantial Evidence.

The undersigned next turns to the issue of the ALJ's consideration of Dr. Mowerman's opinion.   The record includes Dr. Mowerman's Psychiatric and Psychosocial Evaluation (the "PPE"), which contains various opinions.   Specifically, the PPE is a 19-page questionnaire wherein the doctor answers questions concerning a patient's mental/emotional impairments.   *See id.* at 499–517.   The ALJ considered Dr. Mowerman's PPE and afforded it "only some weight to the extent that it is consistent with the residual functional capacity assessed [in the ALJ's opinion]."   *Id.* at 37.   Specifically, the ALJ discounted three of Dr. Mowerman's opinions.   The undersigned now addresses each of those three opinions.

First, Dr. Mowerman opined that "there [is] evidence of adjustment that is no more than marginal, that is," that Plaintiff has "only [] minimal or less capacity to adapt to changes in [his] environment or to demands that are not already part of [his] daily life."   *Id.* at 503.   Moreover, Dr. Mowerman opined that Plaintiff's impairment(s) are "serious and persistent," that "there [is] evidence of medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing to diminish the symptoms and signs of [Plaintiff's] mental disorder(s)."   *Id.* at 503.   The ALJ discounted this opinion because the ALJ found conflicting evidence that Plaintiff had worked after the onset of his disability and cared for a friend.   *Id.* at 32, 37.   In doing so, the ALJ cited to the same record evidence cited for the Paragraph C findings.   For the same reasons already discussed as to the ALJ's consideration of the Paragraph C criteria, the

ALJ's reasons for discounting Dr. Mowerman's opinion are not supported by substantial evidence. Indeed, the record that the ALJ relied upon to draw the conclusions that Plaintiff worked and cared for a friend does not support either statement.

Second, Dr. Mowerman opined that Plaintiff would likely be absent more than four days of work per month and third, he opined that Plaintiff would have a marked limitation in his ability to "[r]espond appropriately to work pressures in a usual work setting." *Id.* at 501; 517. As to these opinions, the ALJ found that they were contradicted by Dr. Mowerman's contemporaneous treatment notes. *See id.* at 37. Specifically, the ALJ noted that Dr. Mowerman's contemporaneous treatment notes consistently demonstrated "normal" and "unremarkable" mental status findings. *Id.* Plaintiff was "cooperative and pleasant," denied "suicidal hallucinations, or delusions," and had normal thought content and intact insight and judgment. *Id.*; *see also, e.g., id.* at 571 (Dr. Mowerman's April 12, 2016 treatment note indicating that Plaintiff was "cooperative and pleasant;" had no hallucinations, delusions, or thought content disorder; had fair insight and judgment; and had intact cognitive functioning); *id.* at 526 (Dr. Mowerman's November 14, 2017 treatment note indicating that Plaintiff's "[j]udgement was not impaired" and Plaintiff had "[n]o impairment of abstract reasoning," had intact insight and no obsession, delusions, or suicidal ideation, and was cooperative); *id.* at 759–60 (Dr. Mowerman's February 11, 2020 treatment note indicating that Plaintiff had "[n]o impairment of abstract reasoning . . . [or] [j]udgment;" no delusions, obsessions, or suicidal ideation, and had intact insight); *id.* at 803–04 (Dr. Mowerman's February 20, 2019 treatment note indicating that Plaintiff had "[n]o impairment of abstract reasoning . . . [or] [j]udgment;" no delusions, obsessions, or suicidal ideation, and had intact insight). While the ALJ accurately cites to record evidence, it is not clear how the record evidence

supports a finding that Plaintiff is not likely to have any absences from work.  As such, the ALJ's

consideration of Dr. Mowerman is not supported by substantial evidence.[12]

> Accordingly, the undersigned **RECOMMENDS** remand on this ground.

### C. The ALJ's RFC Finding Is Not Supported by Substantial Evidence Because the ALJ Did Not Properly Consider Potential Limitations as a Result of Plaintiff's Bipolar Disorder.

The undersigned next considers whether the ALJ erred in his RFC findings.  Plaintiff

argues that the ALJ's RFC determination requires remand because the ALJ failed to account for

Plaintiff's potential "unexcused absences or time spent off-task" as a result of his bipolar disorder,

as required under *Samuels v. Acting Comm'r of Soc. Sec.*, 959 F.3d 1042 (11th Cir. 2020).  ECF

Nos. [21] at 26; [23] at 17.  According to Plaintiff, the ALJ's opinion runs afoul of SSR 96-8p

because the ALJ failed to make a finding as to how Plaintiff's limitations impact his ability to

work, including Plaintiff's ability to respond to work pressures.  *See* ECF Nos. [21] at 9–12; [23]

at 7–11.  Plaintiff argues that the ALJ was required to make a finding as to how often Plaintiff is

likely to be absent from work, on average, because: (1) the VE testified at the hearing "that for the

ALJ's hypothetical individual, 'missing one day a month from work on a consistent basis would

be considered work preclusive;'" and (2) the Eleventh Circuit has indicated that the number of

absent days per month is a particularly important consideration for individuals with bipolar

disorder.  ECF No. [21] at 26.

---

[12] Notwithstanding, it should be noted that the ALJ's statement affording Dr. Mowerman "some weight" does provide, contrary to Plaintiff's argument, a sufficiently particularized explanation of the weight attributed to his opinions.  An ALJ must "state with particularity the weight given" to the medical opinions provided and the justification for the weight.  *Martinez*, 660 F. App'x at 793 (citing *Sharfarz*, 825 F.2d at 279).  However, "[t]here are no magic words to state with particularity the weight given to the medical opinions."  *Martin v. Acting Comm'r of Soc. Sec.*, No. 21-cv-11532, 2022 WL 1486387, at *6 (11th Cir. May 11, 2022).  Here, the ALJ clearly stated that he afforded Dr. Mowerman's opinions "some weight," and although the decision is not supported by substantial evidence, the description is not, in and of itself, improper.

It is now well settled in this Circuit that in reaching an RFC determination, an ALJ must consider how a claimant's mental impairments affect the claimant's ability to work. *See Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268–70 (11th Cir. 2019); *see also Samuels*, 959 F.3d at 1046. In *Samuels v. Commissioner of Social Security*, the ALJ found that the claimant's "bipolar disorder was a 'severe impairment[]' that 'caused significant limitation in the claimant's ability to perform basic work activities'" yet "the ALJ nowhere indicated [in hypotheticals posed to the VE] that medical evidence suggested [the claimant's] ability to work was affected by that impairment," nor did the ALJ "implicitly account for [the claimant's] mental limitations as reflected in the record." 959 F.3d at 1047. The Eleventh Circuit specifically noted that the ALJ failed to "account for unexcused absences or time spent off-task, which were limitations caused by [the claimant's] bipolar disorder that were reflected in the record." *Id.* The Court remanded, instructing the Commissioner to "account for the episodic nature of [the claimant's] bipolar disorder in determining her RFC and whether there are jobs in the national economy that [the claimant] can perform." *Id.*

Here, the ALJ found that Plaintiff's bipolar disorder is a "severe" impairment in that it "result[s] in more than minimal limitations in the claimant's ability to perform basic work activities." R. at 30–31. Specifically, the ALJ found that Plaintiff has moderate limitation in interacting with others and "with regard to concentrating, persisting, or maintaining pace." *Id.* at 31–32. The ALJ found that Plaintiff has mild limitation in "understanding, remembering, or applying information" and "adapting or managing oneself." *Id.* However, in his RFC determination, the ALJ failed to properly consider some of the limitations caused by Plaintiff's bipolar disorder. Specifically, the ALJ failed to consider whether Plaintiff would miss any days of work. On this record, this failure is error.

Like *Samuels*, there is evidence in the record that Plaintiff's mental limitations arising from his bipolar disorder resulted in "unexcused absences or time spent off-task." *See Samuels*, 959 F.3d at 1047. Specifically, the State agency psychological consultants, James Mendelson, Ph.D. and Thoma Conger, Ph.D., whose opinions the ALJ gave great weight, R. at 36, opined as to this limitation. Specifically, Dr. Mendelson opined that Plaintiff was "moderately limited" in his "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." *Id.* at 139. Likewise, Dr. Conger opined that Plaintiff was "moderately limited" in his "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform a consistent pace without an unreasonable number and length of rest periods," though he also noted that "[a]lthough [Plaintiff's] condition may result in some concentration problems at times, he is mentally capable of performing routine tasks on a sustained basis." *Id.* at 152. The ALJ does not discuss these specific opinions, nor were absences considered in the RFC analysis. Instead, the ALJ rejected Dr. Mowerman's opinion that Plaintiff would be absent from work more than four days per month, but made no finding as to how many days, if any, Plaintiff would be absent. Given the opinions of the State experts, the failure to make any finding in this regard is error.

At the hearing, the ALJ asked the VE how potential absences would impact Plaintiff's ability to work. In the ALJ's first question to the VE, the ALJ posed a hypothetical individual, with the same limitations present in the RFC. *Id.* at 88. The VE testified that such an individual could perform work as a dining room attendant, laundry laborer, or stock selector. *Id.* The ALJ then posed a second question to the VE, asking the VE to:

> [i]magine a second hypothetical individual with the [Plaintiff's] medical, educational, and vocational profile, subject to the same limitations as the individual in hypothetical #1, except that this individual will miss two or more days of work a month, due to

psychologically based symptoms.  Can this individual perform any work in the national economy?

*Id.*  The VE responded that "missing one day a month from work on a consistent basis would be considered work-preclusive."  *Id.* at 88–89.

Despite the State agency psychological consultants' opinions, and the testimony of the VE regarding the impact of missing even as little as two days of work per month, the ALJ did not make any finding as to whether Plaintiff's bipolar disorder would cause him limitations in his ability to regularly attend work, or whether he would require absences or breaks.  Given the requirement that an RFC analysis contemplate mental limitations, the ALJ's finding is not supported by substantial evidence, since he fails to explain whether or how the limitation of potential absences was considered in Plaintiff's RFC.  *See Henkel v. Comm'r of Soc. Sec. Admin.*, No. 20-cv-14363, 2022 WL 2012421, at *9 (S.D. Fla. May 23, 2022) (remanding where "[t]he ALJ provided no real assessment of how Plaintiff's mental impairments—including bipolar disorder—affected his ability to work.  There is no logical bridge between the ALJ's finding that Plaintiff had mild impairments in three of the four areas of mental functioning and yet no limits whatsoever in the mental functions associated with work."), *report and recommendation adopted*, No. 20-cv-14363, 2022 WL 1978711 (S.D. Fla. June 6, 2022).  Accordingly, the undersigned **RECOMMENDS** remand as the RFC is not supported by substantial evidence.[13]

---

[13] The ALJ's RFC finding did reflect some limitations resulting from Plaintiff's moderate limitation in interacting with others, as the ALJ found that Plaintiff could "occasionally interact with coworkers and *supervisors*, but never with the public."  *Id.* at 31–33 (emphasis added to reflect the finding that the ALJ appears to have made and not the typographical error).  It also reflected Plaintiff's moderate limitation in "concentrating, persisting, or maintaining pace," as the ALJ found that Plaintiff could "follow detailed but *uninvolved* instructions."  *Id.* at 32–33 (again, emphasis added to reflect the finding that the ALJ appears to have made and not the typographical error).  These findings, however, were not sufficient as they did not address his ability to attend work without absences.  As to Plaintiff's argument that the RFC is not correct because its language is not consistent, and Plaintiff's argument that the ALJ did not show that work exists in significant numbers that Plaintiff could perform given his RFC assessment, the undersigned notes that where

## III.    RECOMMENDATION

For the reasons stated above, the undersigned hereby **RECOMMENDS** that Plaintiff's Motion, ECF No. [21], be **GRANTED**, and Defendant's Motion, ECF No. [22], be **DENIED**.

## IV.    OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation.  Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on August 15, 2022.

_____

**JACQUELINE BECERRA**
**UNITED STATES MAGISTRATE JUDGE**

---

an ALJ's opinion contains a typographical error but it is clear from the record what the ALJ intended, and that finding is supported by substantial evidence, remand is not necessary.  *See Jasent v. Berryhill*, No. 17-cv-2925-T-30AEP, 2019 WL 298430, at *7 (M.D. Fla. Jan. 3, 2019), *report and recommendation adopted*, No. 17-cv-2925-T-30AEP, 2019 WL 293311 (M.D. Fla. Jan. 23, 2019).  Here, given the ALJ's questions to the VE, it is clear that the ALJ intended to find that Plaintiff could "follow detailed but *uninvolved* instructions" and could "occasionally interact with coworkers and *supervisors*, but never with the public."  *See* R. at 33; 88.  However, because the undersigned RECOMMENDS remand, the ALJ should now correct these errors.